396 P.3d 631

**SOLARCITY CORPORATION, et al., Plaintiffs/Appellants,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellee.**

**SolarCity Corporation, et al., Plaintiffs/Appellees,**

v.

**Arizona Department of Revenue, Defendant/Appellant.**

**No. 1 CA-TX 15-0008**

Court of Appeals of Arizona, Division 1.

FILED 5/18/2017

Mooney, Wright & Moore, PLLC, Mesa, By Paul J. Mooney, Bart S. Wilhoit, Rose Law Group, PC, Scottsdale, By Court S. Rich, Logan V. Elia, Counsel for Plaintiffs/Appellants/Appellees

Arizona Attorney General's Office, Phoenix, By Kenneth J. Love, Jerry A. Fries, Macaen F. Mahoney, Counsel for Defendant/Appellee/Appellant

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Donn Kessler joined.

## OPINION

HOWE, Judge:

¶1 In 2013, the Arizona Department of Revenue ("Department") decided that it could value for taxation purposes solar ener-

gy panels owned by companies that lease and install the panels on their customers' property for the generation of electricity. The Department determined that the panels could be valued because under the relevant Arizona statutes, the panels were renewable energy equipment that solar power companies used in the operation of an electric generation facility.

¶ 2 Two solar power companies, SolarCity Corporation and SunRun, Inc. (collectively, "Taxpayers") sought a declaratory judgment in the tax court that the solar panels were not taxable. They argued that the panels were not renewable energy equipment used in the operation of an electric generation facility, but were used for the customers' production of electricity for their own consumption. They also argued that because the panels were solar energy systems designed to produce electricity primarily for on-site consumption, the panels had no value for taxation purposes.

¶ 3 After considering cross-motions for summary judgment, the tax court issued a declaratory judgment agreeing with Taxpayers that the solar panels were not renewable energy equipment used in the operation of an electric generation facility and could not be so valued under the taxation statutes. The tax court further declared, however, that considering solar panels designed primarily for on-site consumption to have no value or to add no value to property for taxation purposes violated the Exemptions and Uniformity Clauses of the Arizona Constitution. The court ruled that valuing the solar panels at zero effectively exempted them from taxation. The court also ruled that distinguishing between solar panels that are used "primarily" for on-site consumption and those that are not did not treat similarly-situated property uniformly. The Department and Taxpayers both appeal that judgment.

¶ 4 Upon review, we affirm the judgment in part and reverse in part. The tax court correctly ruled that the Department had no statutory basis to value the solar panels leased to Taxpayers' customers because the panels do not constitute renewable energy equipment used in an electric generation facility. We reverse the tax court's declaration of unconstitutionality, however. Legislatively mandating that Taxpayers' solar panels have or add no value for tax purposes does not exempt them from taxation, and treating solar energy systems designed primarily for on-site consumption differently from those that are not does not violate the principle of uniformity because the two types of systems are not similarly-situated property.

## FACTS AND PROCEDURAL HISTORY

¶ 5 Taxpayers sell and lease rooftop solar panel systems to owners of residential and commercial buildings and also install, maintain, and operate the panels. The solar panels take solar energy, convert it to electricity in an inverter, and use the converted energy to meet the building's current electricity demands. Because this process generates electricity for the residence or commercial property without drawing electricity from a utility company, it is referred to as being "behind the meter." The energy that the solar panels produce cannot be stored, however, and must be used as it is generated. Accordingly, whatever generated electricity is not used to meet the building's current electricity demands travels from behind the meter to power grids owned and maintained by traditional utility companies. Taxpayers' solar panels are thus "grid-tied," or linked to the traditional utility power grids.

¶ 6 Most homeowners with Taxpayers' solar panels have a "net-metering" agreement with the traditional utility companies. Net-metering is a process through which the utility companies track the amount of electricity that flows from behind the meter onto the grid from the building's solar panel, and credit the homeowner for the retail value of that amount.[1] The utility companies then ap-

---

1.  After oral argument in this case and while this opinion was pending, the Arizona Corporation Commission replaced net-metering with a new methodology for determining the rates at which the customer is credited. *See* Arizona Corp. Comm'n, *Commission Passes Historic Decision to* *Protect Solar Interests and Provide Equity for all Customers,* available at http://www.azcc.gov/Divisions/Administration/news/2016Releases/12–21–2016%20Value%20and%20Cost%20of%20Solar%20decision.pdf (last visited May 16, 2017).

ply this credit to offset the cost of electricity that the home or building owner must purchase from the utility company during times when the solar panels cannot produce power.

¶ 7 Because the solar panels are intended to generate and provide electricity to meet a building's needs, Taxpayers design each individual system separately. In doing so, they rely on the customer's consumption data to ascertain how much energy the building typically uses, as well as data relating to the physical characteristics of the installation location. After obtaining this data, Taxpayers typically create a solar panel system that produces less than 100% of the annual consumption. This standard ensures compliance with Arizona Corporation Commission regulations that prohibit rooftop solar panel systems from producing more than 125% of the location's annual consumption. How much electricity is actually consumed once a solar panel system is installed, however, depends on the habits of the building owners and several other variables, including weather and the number of occupants during a given period.

¶ 8 In 2013, the Department issued a memorandum analyzing two statutes to determine whether solar panels "owned by a solar power er company and installed at a customer's site to sell or provide power to the customer" are taxable and subject to valuation by the Department or local valuation by the counties. The first statute, A.R.S. § 42–11054(C)(2), (the "solar energy systems statute") requires the Department to prescribe guidelines for applying standard appraisal methods and techniques to be used by the county assessors in determining a property's value. The statute specifies, however, that in applying any prescribed standard appraisal methods and techniques, "solar energy devices, ... grid-tied photovoltaic systems and any other device or system designed for the production of solar energy primarily for on-site consumption are considered to have no value and to add no value to the property on which such device or system is installed." A.R.S. § 42–11054(C)(2). The second statute, A.R.S. § 42–14155 (the "renewable energy equipment valuation statute"), requires the Department to value "renewable energy equip-

ment" for taxation purposes at 20% of the equipment's depreciated cost. For purposes of this renewable energy equipment valuation statute, "renewable energy equipment" means "electric generation facilities ... located in this state, that [are] used or useful for the generation ... of electric power ... derived from solar ... not intended for self-consumption." A.R.S. § 42–14155(C)(3).

¶ 9 Reading these statutes together, the Department concluded that leased solar panels should be assessed by the Department under the renewable energy equipment valuation statute as renewable energy equipment. The Department reasoned that because solar panel companies—which own the panels—do not consume the electricity the leased panels produce, the panels are not intended for self-consumption and therefore must be renewable energy equipment. The Department stated that this specific statute applies only when the solar panels are leased by solar panel companies, but not when the homeowners themselves own the panels. In the latter situation, because the solar panel owners would be the ones using the produced energy, the solar energy systems statute would apply and the panels would be considered to have no value and add no value to the property.

¶ 10 In May 2014, Taxpayers asked the Department to reconsider its position because it had incorrectly interpreted the solar energy systems statute. When the Department notified Taxpayers that it stood by its position, Taxpayers sought a declaration in the tax court that the Department lacked authority to assess Taxpayers' leased solar panels under the renewable energy equipment valuation statute because the panels were systems designed for primarily on-site consumption, which meant that under the solar energy systems statute, the panels had no value or added no value to any property on which the panels were installed.

¶ 11 Soon after, Taxpayers moved for summary judgment on the interpretations of the solar energy systems statute and the renewable energy equipment valuation statute. Taxpayers argued that the tax court could enter summary judgment without a need for discovery because the issues presented in

the complaint were purely legal and no genuine issues of material fact existed. The Department disagreed, however, and moved for additional time to conduct discovery before responding to Taxpayers' motion. The Department argued that it needed to obtain discovery about how the solar panels deliver electricity, who Taxpayers' customers are, and generally what Taxpayers' business models are. The tax court granted the Department's request.

¶ 12 Disputes continued over the following months about the necessity and sufficiency of discovery requests. Counsel met to confer about the disputes and ultimately resolved many by stipulation. But they were unable to resolve disputes about the disclosure of Taxpayers' strategic plans and the names of representatives that might have other sought-after information, so the Department moved to compel their production. The parties then agreed to stay the motion to allow time to depose Taxpayers' representatives. The Department nevertheless continued to request additional time for discovery and additional information, and ultimately asked the tax court to lift the stay on the motion to compel. The tax court denied the motion. The Department later moved to compel again, but the tax court denied the motion, finding that although the Department maintained that any disclosures it received from Taxpayers were inadequate, the Department failed to "describe the response to each request or how, or why, such response is inadequate."

¶ 13 In March 2015, the Department cross-moved for summary judgment, arguing that Taxpayers' solar panels must be centrally assessed by the Department under the renewable energy equipment valuation statute as a matter of law. The Department argued alternatively that the tax court should hold that the valuation provided by the solar energy systems statute is unconstitutional as applied to Taxpayers' leased panels because those panels are not entitled to a zero-value. It further argued that application of the solar energy systems statute to leased panels violated the Uniformity Clause of the Arizona Constitution because "the electrical generation properties of traditional electrical generators can be valued under A.R.S. § 42–14151 [(the "electric generation statute")] ... but the electrical generation properties of distributed electrical generators," which the Department argued included leased solar panels, cannot. In the meantime, the Department mailed notices of value to Taxpayers for the 2015 tax year valuing their properties consistent with the 2013 memorandum.[2]

¶ 14 The tax court granted Taxpayers summary judgment in part, holding that Taxpayers' solar panels do not conduct the "generation of electricity" for purposes of the electric generation statute, and that the Department therefore lacked the authority to centrally assess the panels under that statute and the renewable energy equipment valuation statute. The court reasoned that the solar panels do not deliver the electricity they produce through a transmission and distribution system as the statute requires. The court stated that the panels instead transfer any surplus energy to the meter, where the traditional utility companies receive it and then use their own transmission and distribution system to deliver that energy to their own customers. The tax court concluded that because the Department lacks authority to assess the solar panels, the panels must be locally assessed and valued by the individual counties pursuant to A.R.S. § 42–13051(A).

¶ 15 The tax court denied Taxpayers' motion for summary judgment, however, on the issue of valuation, finding the solar energy systems statute unconstitutional for two reasons. First, the tax court held that the solar energy systems statute violated the Exemptions Clause, Article 9, Section 2 of the Arizona Constitution, because it effectively exempted the panels from taxation. The tax court reasoned that by mandating that solar panel systems have no value for assessment purposes, "whether no tax is assessed or a tax is assessed on a value of zero, the result is zero tax." The court further stated that although the Legislature may choose to not

**2.** Taxpayers separately filed protective valuation appeals for the Department's valuations for the 2015 tax year. After completing briefing on appeal, Taxpayers jointly requested that this Court take judicial notice of Taxpayers' additional appeals relating to the Department's valuations of their properties for the 2016 and 2017 tax years. We grant their requests.

tax certain categories of property, it may not exempt otherwise taxable property.

¶ 16 Second, the tax court held that the solar energy systems statute violated the Uniformity Clause, Article 1, Section 1 of the Arizona Constitution, because the statute distinguished between solar panels "primarily" intended for self-consumption and those that were not. Consequently, "within [the renewable energy equipment valuation statute's] class of equipment producing electricity not for self-consumption," two tax rates existed: "zero for equipment meeting the 'primarily' standard and [20%] of depreciated cost for other equipment."

¶ 17 The tax court held that the solar energy systems statute violates the Uniformity Clause also because the statute would apply differently "based on the amount of electricity used by the building on which the device is installed." The tax court explained through hypothetical examples that houses with identical solar panels would be taxed differently depending on whether the panels' output was more or less than 125% of the particular house's consumption in a given month.

¶ 18 Additionally, the tax court denied all requests for attorneys' fees and sanctions under A.R.S. § 12–349, finding that neither party unreasonably delayed the proceedings. The court stated that the novel nature of the issues was such that the law and unfamiliar factual scenarios were important to both sides. The court further stated that neither party acted in bad faith, but instead simply disagreed on the scope of discovery and strongly advocated accordingly. The court also denied Taxpayers' request for attorneys' fees under A.R.S. § 12–348(B) because they were not the prevailing parties. Although Taxpayers received the sought-after declaration that the Department lacked the authority to centrally assess the solar panels under the electric generation statute and the renewable energy equipment valuation statute, the tax court also held that the statute that Taxpayers argued exempted them from taxation was unconstitutional. Finally, the court held that, like Taxpayers, the Department did not prevail for purposes of awarding

costs under A.R.S. §§ 12–332 and –341, and denied their requests.

¶ 19 The court entered judgment consistent with these rulings. Taxpayers timely appealed from the portions of the tax court's judgment holding that the solar energy systems statute is unconstitutional and declaring that the counties have authority to assess and value their solar panels. The Department also timely appealed the tax court's judgment that the Department cannot assess Taxpayers' solar panels under the electric generation statute and the renewable energy equipment valuation statute. Both parties appeal from the tax court's denial of the imposition of sanctions and attorneys' fees against either party.

## DISCUSSION

### 1. The Department's Assessment Authority

¶ 20 The Department first argues that the tax court erred by granting Taxpayers' motion for summary judgment regarding its authority to centrally assess Taxpayers' solar panels. Specifically, the Department argues that the electric generation statute mandates that it centrally assess Taxpayers' leased solar panels because Taxpayers are in the business of operating "electric generation facilities" under the statute's definition. Summary judgment may be granted when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). When the material facts are undisputed, this Court determines whether the tax court correctly applied the substantive law to those facts. *Duke Energy Arlington Valley, LLC v. Ariz. Dep't of Revenue*, 219 Ariz. 76, 77 ¶ 4, 193 P.3d 330, 331 (App. 2008). We review the tax court's granting summary judgment de novo. *Scottsdale/101 Assocs., LLC v. Maricopa Cty.*, 238 Ariz. 291, 292 ¶ 7, 359 P.3d 1035, 1036 (App. 2015). We similarly review the tax court's construction of applicable statutes de novo. *See Chevron U.S.A. v. Ariz. Dep't of Revenue*, 238 Ariz. 519, 520 ¶ 6, 363 P.3d 136, 137 (App. 2015). Because Taxpayers' solar panels—regardless whether sold or leased—do not fit within the electric generation or renewable energy equipment valuation stat-

utes, the tax court did not err by granting summary judgment.

¶ 21 The primary goal of statutory interpretation is to effectuate the Legislature's intent. *General Motors Corp. v. Maricopa Cty.*, 237 Ariz. 337, 339 ¶ 8, 350 P.3d 841, 843 (App. 2015). The statute's plain language is the most reliable indicator of that intent. *Sempre Ltd. P'ship v. Maricopa Cty.*, 225 Ariz. 106, 108 ¶ 5, 235 P.3d 259, 261 (App. 2010). In interpreting a statute, we consider it as a whole, which includes considering its context within a broader statutory scheme. *General Motors*, 237 Ariz. at 339 ¶ 8, 350 P.3d at 843.

■ ¶ 22 The Arizona Constitution states that all property not exempt by law is subject to taxation. Ariz. Const. art. 9, § 2(13). Subject to constitutional limitations, the Legislature enjoys plenary power over taxation. *Waddell v. 38th St. P'ship*, 173 Ariz. 137, 140, 840 P.2d 313, 316 (1992). In exercising this power, the Legislature has directed that the Department "shall annually determine the valuation, in the manner prescribed by this article, of all property, owned or leased, and used by taxpayers" that are in the business of operating an electric generation facility. A.R.S. § 42–14151(A)(4). An "electric generation facility" includes "all land, buildings and personal property that is situated in this state and that is used or useful for the generation of electric power." A.R.S. § 42–14156(B)(1). The "generation of electricity" means "the process of taking a source of energy ... or renewable sources and converting the energy into electricity to be delivered to customers through a transmission and distribution system." A.R.S. § 42–14151(B). Further, the Legislature has mandated that the Department determine the full cash value of taxable renewable energy equipment at 20% of its depreciated cost. A.R.S. § 42–14155(A), (B). "Renewable energy equipment" for purposes of the valuation statute means "electric generation facilities ... used or useful for the generation, storage, transmission or distribution of electric power ... derived from ... nonpetroleum renewable sources not intended for self-consumption." A.R.S. § 42–14155(C)(3).

¶ 23 None of these statutes authorize the Department to centrally assess Taxpayers' solar panels because: first, Taxpayers are not in the business of operating an electric generation facility, and second, the solar panels are not renewable energy equipment. First, the electric generation statute does not apply to Taxpayers because they are not in the business of operating electric generation facilities that convert energy to electricity to be delivered to customers through a transmission and distribution system. While the grid-tied solar panel systems that Taxpayers sell or lease to their customers do take a source of energy (solar) and convert it into electricity, the panels do not do so specifically "to be delivered to customers through a transmission and distribution system" as the electric generation statute requires. The panels convert the energy into electricity to be consumed by the building on which they are installed. The record shows that the panels' location "behind the meter" allows the panels to generate energy to meet the power demand of the home or business on which they are installed. Only after this power is made available to a home or business does the variable amount of surplus electricity travel from behind the meter to traditional utility company grids. Under the net-metering model, the traditional utility company purchases that surplus electricity in exchange for a credit to the building's owner, then distributes its newly acquired electricity through its transmission and distribution system to its own customers who need it at that time.

¶ 24 Taxpayers do not sell electricity or control the use of the converted energy and do not receive any benefit from the traditional utility companies for the generation of surplus power. Taxpayers' involvement does not reach beyond managing the purchase or lease agreements with their own customers and installing and maintaining the solar panels. Although electricity generated by the solar panels, if not otherwise used, may ultimately end up supplying the power needs of traditional utility customers, this is not the primary purpose of the conversion of energy by the panels. Instead, this is simply a secondary function that occurs when the individual customer's demand fluctuates but the generation of electricity remains constant. If

the purpose of Taxpayers' solar panels was the generation of electricity to export to the grid for sale to utility customers, Taxpayers would essentially be the utilities' suppliers— not their competitors as the Department urges.

¶ 25 The Department counters that nothing in the statute's language specifies that all produced electricity must be delivered to the property owner's (here, Taxpayers') *own* customers, and that interpreting it as such improperly adds words to the electric generation statute's plain language. But giving the statute the meaning that the Department urges—that equipment generates electricity if it converts energy that is ultimately delivered to *any* customer or end-user through a transmission and distribution system—is the interpretation that reads words into the statute, and is inconsistent with the statute's plain meaning. The Department's interpretation requires adding the words "any provider's" before "customers." This interpretation necessarily fails for yet another reason. The Legislature would have had no need to specify that the electricity be delivered to "customers" if it intended to apply to any person, place, or thing that uses electricity received from a transmission and distribution system. Such intent could have been achieved by omitting the word "customers." This interpretation thus would render the word insignificant and superfluous. *See Corbett v. ManorCare of America, Inc.*, 213 Ariz. 618, 629 ¶ 35, 146 P.3d 1027, 1038 (App. 2006) (providing that in interpreting a statute, "we give meaning to each word or phrase . . . so none is rendered insignificant, contradictory, superfluous, or void").

¶ 26 The Department additionally counters that holding that Taxpayers' solar panels do not "generate electricity" pursuant to the electric generation statute would lead to absurd results because "no merchant electric facilities, which act as electric wholesalers, would be subject to the Department's valuation and assessment." However, the merchant electric facilities the Department refers to do convert energy to electricity to be delivered to customers through a transmission and distribution system. Unlike Taxpayers' solar panels, which convert energy to be used primarily to meet the power needs of the buildings on which they are installed, merchant electric facilities convert energy to be delivered through the grid to utility customers. Moreover, merchant electric facilities convert energy on a large scale for sale to utilities, rather than on a small scale for personal use, as solar panels on individual buildings do. In fact, the panels are limited to producing no more than 125% of electricity to meet a specific building's calculated use—a limitation not present for electric wholesalers. Thus, the electric generation statute does not apply to Taxpayers' solar panels.

¶ 27 Second, just as the electric generation statute does not apply because Taxpayers are not in the business of operating an electric generation facility, the renewable energy equipment valuation statute also does not apply because Taxpayers' solar panels are not "renewable energy equipment." *See* A.R.S. § 42–14155(C)(3). In exercising its plenary taxation power, the Legislature has mandated that the Department determine the full cash value of taxable renewable energy equipment—which includes equipment not intended for self-consumption—at 20% of its depreciated cost. *See* A.R.S. §§ 42–14155(A), (B), –14155(C)(3). As explained above, the solar panels do not "generate electricity" under the electric generation statute because they do not convert energy to be delivered to customers through a transmission and distribution system, and thus are not "electric generation facilities" under the statutes' definitions. Moreover, the panels convert energy into electricity intended for self-consumption by the panel owners or lessors. Accordingly, because Taxpayers' solar panels do not "generate electricity" in the way described by the electric generation statute, the panels are not "renewable energy equipment," and the statute does not apply to them. The Department thus lacks authority under it to centrally assess the panels pursuant to the renewable energy equipment valuation statute, and the tax court did not err by granting summary judgment on this issue.

## 2. The Solar Energy Systems Statute

¶ 28 Taxpayers agreed with the tax court that the electric generation and renew-

able energy equipment valuation statutes do not authorize the Department to centrally assess Taxpayers' panels. But they contend that the tax court erred by ruling that the solar energy systems statute—which requires that Taxpayers' panels, as solar energy systems designed for the production of solar energy primarily for on-site consumption, "are considered to have no value and to add no value to the property on which such device or system is installed"—violates the Arizona Constitution's Exemptions and Uniformity Clauses. Ariz. Const. art. 9, §§ 1, 2(13).[3] We review a statute's constitutionality de novo and, if possible, construe it to uphold its constitutionality. *State v. Glassel*, 211 Ariz. 33, 51 ¶ 65, 116 P.3d 1193, 1211 (2005). In doing so, we presume that the statute is constitutional. *Kurti v. Maricopa Cty.*, 201 Ariz. 165, 168 ¶ 7, 33 P.3d 499, 502 (App. 2001). The tax court erred because the solar energy systems statute neither exempts property from taxation, nor treats similarly-situated property different under the tax law.

### 2a. The Exemptions Clause

¶ 29 Taxpayers argue that the tax court erred by finding that the solar energy systems statute unlawfully exempted the solar panels from taxation because the Arizona Constitution does not provide an applicable exemption. Although we generally liberally construe statutes that impose taxes in favor of taxpayers, *CCI Europe, Inc. v. Ariz. Dep't of Revenue*, 237 Ariz. 50, 52 ¶ 8, 344 P.3d 352, 354 (App. 2015), we strictly construe tax deductions and exemptions, *Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511–12 ¶ 16, 65 P.3d 458, 460–61 (App. 2003). Even construing the statute strictly, however, the solar energy systems statute does not improperly exempt Taxpayers' solar panels from taxation; therefore, the statute is not unconstitutional.

¶ 30 The Arizona Constitution's Exemptions Clause provides that all property not specifically exempted by the Constitution is "subject to taxation ... as provided by law." Ariz. Const. art. 9, § 2(13). This means

that the Legislature may impose a tax on all property not specifically exempted and may establish the mechanism for doing so. *Airport Props. v. Maricopa Cty.*, 195 Ariz. 89, 99 ¶ 37, 985 P.2d 574, 584 (App. 1999). But "the limited exemption authority that the Arizona Constitution grants to the Legislature necessarily curtails the scope of any tax-exemption statute." *Univ. Med. v. Ariz. Dep't of Revenue*, 201 Ariz. 447, 452 ¶ 21, 36 P.3d 1217, 1222 (App. 2001). Stated differently, while the Legislature may choose to not tax certain classes of property, it may not exempt property from taxation that the constitution does not exempt and is otherwise taxable. *Kunes v. Samaritan Health Serv.*, 121 Ariz. 413, 415, 590 P.2d 1359, 1361 (1979).

¶ 31 Nevertheless, the provision does not require that the Legislature tax all property not specifically exempted. *Airport Props.*, 195 Ariz. at 99 ¶ 37, 985 P.2d at 584 (stating that when something is "subject to" an influence or action, "it does not communicate the idea that it continuously and actively is affected by that influence or action"). The Legislature may choose to not tax certain classes of property which it may otherwise tax. *Id.* at 101 ¶ 44, 985 P.2d at 586 (rejecting the argument that the Legislature has a positive duty to tax all non-constitutionally exempt property unless the constitution requires it not to).

¶ 32 As the tax court noted, the constitution does not provide a specific exemption for solar panels. Consequently, the Legislature is prohibited from exempting the panels from taxation. But the Legislature has not done so here. It has instead directed that the Department set guidelines for applying standard appraisal methods and techniques to be used by it and county assessors in determining the value of property. The statute further provides that in applying those standard appraisal methods and techniques to ascertain the value of the solar panels, leased or owned, the panels should be assessed as if they have or add no value. In other words, the Legislature has established that when

---

**3.** The Department concedes that the tax court "went too far in making the blanket holding" that the statute is unconstitutional. Instead, the

Department supports the trial court's ruling only as it applied to Taxpayers' leased panels, not to solar panels owned by homeowners.

assessing taxes, solar energy systems should not be separately valued.

¶ 33 We have previously held that a legislative decision to not tax property does not exempt property from taxation, but "omits [the property] from the state's exercise of its power to tax by dint of sovereign political discretion." *See id.* at 101 ¶ 43, 985 P.2d at 586. A similar but more straightforward situation exists here. The solar energy systems statute's plain language indicates that the Legislature chose to exercise its power of taxation and assign a value of zero to installed grid-tied photovoltaic and solar energy systems when applying standard appraisal methods and techniques. The solar energy systems statute is not an exemption from taxation; it is merely the Legislature's directive to assess and tax a specific property class in a particular way. *Cf. Cutter Aviation, Inc. v. Ariz. Dep't of Revenue*, 191 Ariz. 485, 498, 958 P.2d 1, 14 (App. 1997) ("Rather than exempting certain property from taxation, class 12 merely provided a different assessment rate for such property" when it imposed only a 1% tax rate instead of the 25% tax rate imposed upon property in other classes). Accordingly, the statute does not violate the Exemptions Clause.

## 2b. The Uniformity Clause

¶ 34 Taxpayers further argue that the tax court erred by holding that the solar energy systems statute violates the Uniformity Clause by creating two tax rates for "equipment producing electricity not for self-consumption" depending on whether the equipment "meet[s] the 'primarily' standard." If the Legislature chooses to tax property, the Uniformity Clause mandates that "all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." Ariz. Const. art. 9, § 1. A "class" of property includes "similarly-situated properties possessing common attributes 'based on the nature of the property or on some other real difference in its use, utility, or productivity.'" *Aileen H. Char. Life Interest v. Maricopa Cty.*, 208 Ariz. 286, 292 ¶ 15, 93 P.3d 486, 492 (2004). A statutory classification violates the Uniformity Clause if it applies differently to businesses that (1) are direct competitors, (2) provide similar services, (3) have the same customer base, and (4) use the same equipment type. *Cable One, Inc. v. Ariz. Dep't of Revenue*, 232 Ariz. 275, 286 ¶ 49, 304 P.3d 1098, 1109 (App. 2013). In considering these factors, courts look at the property's physical attributes, productivity, use, and purpose. *In re America W.*, 179 Ariz. 528, 532 n.4, 880 P.2d 1074, 1078 n.4 (1994). But the paramount concern is whether the properties and the comparison taxpayers are functionally equivalent. *Citizens Telecomm. Co. of White Mountains v. Ariz. Dep't of Revenue*, 206 Ariz. 33, 39 ¶ 24; 75 P.3d 123, 129 (App. 2003).

¶ 35 Here, the tax court incorrectly held that the solar energy systems statute violates the Uniformity Clause. Taxpayers are not functionally equivalent to the local utilities and electric generation facilities taxed under the electric generation and renewable energy equipment valuation statutes. Taxpayers and local utilities and other electrical generators are not direct competitors. Large-scale utility facilities produce large amounts of energy to be made available to all traditional utility customers. They sell the service of providing this electricity through the companies' transmission and distribution systems. Conversely, the solar panels Taxpayers lease and install are typically designed to meet less than 100% of the energy demand of the building on which they are located, and are capped to produce up to 125% of that building's demands. The solar panel companies sell the service of designing a solar panel system appropriate for the building and sell or lease the product itself. The electricity produced is intended primarily to meet the power needs of the building on which the panels are installed, and only after it meets those needs does surplus energy, if any, move from behind the meter to the grid so that traditional utilities can deliver it to their customers.

¶ 36 The equipment governed by the solar energy and electric generation statutes also provides different services to different customer bases. The most notable difference is the former: Taxpayers and owners of renewable energy equipment provide different services. Taxpayers lease or sell individual solar panels to be installed on roof tops. Those

panels are intended to produce electricity to be consumed initially by the building on which they sit. Any surplus electricity then is transferred to the grid and the homeowner receives a credit. In contrast, renewable energy equipment that "generates electricity" pursuant to the electric generation statute produces energy specifically to be delivered to traditional electricity customers through the utility-maintained transmission and distribution system. The energy produced is not intended to be self-consumed or consumed on site. Consequently, the two taxpayers and types of property also serve different customer bases.

¶ 37 Finally, Taxpayers and local utilities or other electric generators do not use the same type of property. As explained above—and as the tax court found—the renewable energy equipment valuation statute does not apply to Taxpayers' solar panels because the panels do not fit into that statute's definition of "renewable energy equipment." The renewable energy equipment that the renewable energy equipment valuation statute applies to are electric generation facilities not intended for *self-consumption*. Taxpayers' solar panel systems, on the other hand, are designed to convert solar energy into electricity to be used primarily for *on-site consumption* by the building on which they are installed. The panels are also installed "behind the meter," while the equipment used by electric generators is installed in front of it. Additionally, Taxpayers' solar panels are limited in design to produce up to 125% of a particular building's power needs pursuant to state regulations, unlike the equipment used by large electric generation facilities that generate sufficient energy to help meet all current power demands of their customers. Accordingly, the equipment described in the solar energy systems statute that is considered to have no value and add no value is different than the equipment described in the electric generation and renewable energy equipment valuation statutes that is valued at 20% of the depreciated costs. Because of their difference, the two kinds of property may be properly taxed differently. Thus, the tax court erred by concluding that the solar energy systems statute unconstitutionally violates the Uniformity Clause.

¶ 38 In addition, the tax court erred by finding that the solar energy systems statute violated the Uniformity Clause because it would apply differently to taxpayers based on how much electricity the customer actually used. As Taxpayers note, the tax court's hypothetical examples of houses with identical solar panels illustrated that the court misread and misapplied the solar energy systems statute. The statute's plain language states that it applies to systems *designed* primarily for on-site consumption. Whether the buildings on which the panels are installed *actually* consume less than 125% of the electricity produced (consistent with the industry's standard for when a device is for "primarily" on-site consumption) is not a consideration that the statute requires. So long as the panels were designed to be used primarily for on-site consumption and otherwise meet the requirements set out in the solar energy systems statute, the statute applies regardless of actual usage. But following the tax court's logic, the zero-value could apply to solar panels on any one home one month if the energy generated by the solar panels was used by the consumer, but not the following month if its electricity consumption declined during that time. This would be an absurd result. *See Raby*, 204 Ariz. at 511 ¶ 15, 65 P.3d at 460 (stating that the courts consider statutes as a whole and attempt to give them a fair and sensible meaning while avoiding a construction that produces an absurd result). The tax court's interpretation is therefore incorrect.

¶ 39 Thus, because the statute applies to all rooftop solar energy systems uniformly and does not treat similar property differently, the solar energy systems statute is not unconstitutional. Accordingly, the tax court erred and we reverse its judgment holding that the solar energy systems statute violates the Exemptions and Uniformity Clauses of the Arizona Constitution.

### 3. Local Assessment

¶ 40 Taxpayers next argue that the tax court erred by holding that counties must locally assess the solar panels pursuant to A.R.S. § 42–13051(A). In Arizona, taxable

property is assessed at its full cash value. A.R.S. § 42–11001(5). A property's "full cash value" is the value determined by statute, or in the absence of a statutory valuation method, the estimate of the value that is derived annually by using standard appraisal methods and techniques. *London Bridge Resort, Inc. v. Mohave Cty.*, 200 Ariz. 462, 464 ¶ 6, 27 P.3d 819, 821 (App. 2001). Here, the solar energy systems statute mandates that "the Department shall" prescribe the guidelines for applying standard appraisal methods and techniques. The statute further requires that in applying those methods and techniques, grid-tied photovoltaic systems, as described in subsection (C)(2), shall be considered to have no value and add no value. Thus, the statute provides a method for the Department, not the counties, to value the solar panels. Because the solar energy systems statute is constitutional and applies, the tax court erred by holding that the panels should be locally assessed.

### 4. Sanctions and Attorneys' Fees

¶ 41 The Department argues finally that the tax court erred by denying its motion for sanctions against Taxpayers. Taxpayers argue that the tax court abused its discretion by holding that they did not prevail and by declining to award their attorneys' fees. We review the court's denial of attorneys' fees for an abuse of discretion. *Hormel v. Maricopa Cty.*, 224 Ariz. 454, 461 ¶ 27, 232 P.3d 768, 775 (App. 2010). But we review de novo the tax court's denial of sanctions pursuant to A.R.S. § 12–349. *Id.* In doing so, we review the tax court's findings of fact under a clearly erroneous standard but review its application of the statute de novo. *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555 ¶ 27, 20 P.3d 590, 598 (App. 2001). The tax court did not err by denying the Department's motion for sanctions and fees under A.R.S. § 12–349, but did abuse its discretion by denying Taxpayers' request for fees.

¶ 42 As relevant here, A.R.S. § 12–349 requires a court to impose reasonable attorneys' fees and expenses against a party or attorney under two circumstances: first, if the party or attorney unreasonably expands

or delays the proceeding; second, if the party or attorney engages in abuse of discovery. A.R.S. § 12–349(A)(3) and (4). A court may also award fees and other expenses under A.R.S. § 12–348(B)(1) to a party that prevails in an action against the State challenging the assessment of taxes. A party prevails for purposes of this statute if the party prevails by an adjudication on the merits. *Corley v. Ariz. Bd. of Pardons & Paroles*, 160 Ariz. 611, 613, 775 P.2d 539, 541 (App. 1989).

¶ 43 Here, the tax court's factual findings in denying the Department's motion for sanctions and fees under A.R.S. § 12–349 support its judgment and were not clearly erroneous. The parties had engaged in discovery disputes for nearly the entire duration of the litigation in the tax court. In that time, the parties had met and conferred, and largely resolved most of the disputes. The tax court intervened on matters not resolved— including the Department's insistence that Taxpayers possessed unknown documents that would be helpful to it, and setting multiple depositions of many representatives. After these depositions, the Department continued to request additional time for discovery and additional documents, arguing that the information received from Taxpayers was inadequate. The Department failed, however, to sufficiently describe how Taxpayers' responses to the discovery requests were inadequate. Further, both parties remained adamant in their positions throughout regarding whether discovery was necessary given the nature of the suit, issues presented, and relief sought. Under these facts, the parties clearly did not act unreasonably or abusively, but instead strongly advocated for their adverse positions. None of these factual findings were clearly erroneous, and the tax court did not err by denying the Department's motion.

¶ 44 The tax court did, however, abuse its discretion by failing to grant Taxpayers' fees and expenses pursuant to A.R.S. § 12–348(B)(1). Taxpayers' complaint specifically sought a declaration that the solar energy systems statute applies to their solar panels and therefore their property is not subject to separate valuation or assessment by the Department. The complaint also

sought a declaration that the renewable energy equipment valuation statute does not apply to or authorize the Department to centrally assess the solar panels. Although the tax court correctly found that the renewable energy equipment valuation statute did not apply to Taxpayers' solar panels, it incorrectly held that the solar energy systems statute is unconstitutional. Had the court correctly found that the statute was constitutional, Taxpayers would have prevailed on all matters by an adjudication on the merits, and therefore would have been entitled to fees. In addition, this lawsuit challenged the State's assessment of taxes, which Taxpayers have prevailed on by adjudication of the merits. Taxpayers are therefore entitled to fees under A.R.S. § 12–348(B)(1) and the tax court erred by denying Taxpayers' request. Accordingly, we reverse the tax court's judgment denying fees and remand for proceedings consistent with this opinion.

**5. Attorneys' Fees on Appeal**

¶ 45 Taxpayers request attorneys' fees on appeal pursuant to A.R.S. § 12–348(B). In our discretion, we grant them reasonable attorneys' fees in an amount to be determined upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶ 46 For the foregoing reasons, we affirm the tax court's declaration that Taxpayers' solar panels cannot be centrally assessed pursuant to the electric generation statute and the renewable energy equipment valuation statute. We also affirm the tax court's denial of the Department's motion for sanctions against Taxpayers. However, we reverse the tax court's judgment that the solar energy systems statute is unconstitutional and cannot apply to Taxpayers' solar panels, as well as the court's mandate that the counties locally assess the panels. We also reverse the tax court's denial of Taxpayers' request for attorneys' fees and remand for proceedings consistent with this opinion.